# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JODY FINEFROCK, JULIA
FRANCIS, and SUSAN
BARNINGER, individually and on
behalf of a collective of others
similarly-situated,

      Plaintiffs,

      v.

FIVE GUYS OPERATIONS, LLC,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:16-cv-01221-
SHR

(Judge Sylvia H. Rambo)

*Electronically Filed*

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.H. Phillips, Inc. v. Walling*,
  324 U.S. 490 (1945) ..................................................................................8

*Bramble v. Wal-Mart Stores, Inc.*,
  2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ...................................6, 7

*Camesi v. University of Pittsburgh Med. Ctr.*,
  729 F.3d 239 (3d Cir. 2013) ...................................................................5

*Gordon v. Maxim Healthcare Servs*
  2014 WL 7008469 (E.D. Pa. Dec. 11, 2014) ..............................5, 6, 7

*Gordon v. Maxim Healthcare Servs.*
  2017 WL 3116153 (July 21, 2017) .........................................................6

*Hall v. Guardsmark, LLC*,
  2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) ...............................6, 19

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) ........................................................................4, 5, 14

*Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*,
  2009 WL 1515175 (W.D. Pa. June 1, 2009) ........................................6

*Marcus v. American Contract Bridge League*,
  254 F.R.D. 44 (D. Conn. 2008) ..............................................................6

*Mitchell v. Bekins Van & Storage Co.*,
  352 U.S. 1027 (1957) (per curiam) .......................................................8

*Morisky v. Public Service Elec. & Gas Co.*,
  111 F.Supp.2d 493 (D.N.J. 2000) ..........................................................6

*Renstrom v. Nash Fish Co.,*
  787 F.Supp.2d 961, 965 (D. Minn. 2011) ..........................................13

*Symczyk v. Genesis HealthCare Corp.*,
  656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, *Genesis
  Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2012) ...................5, 7, 13

*Williams v. Owens & Minor, Inc.*,
2009 WL 5812596 (E.D. Pa. Oct. 9, 2009) ........................................................7

*Zavala v. Wal-Mart Stores Inc.*,
691 F.3d 527 (3d Cir. 2012) .............................................................................14

**Statutes**

29 U.S.C. ¶ 206(d)(1)..........................................................................................8

FLSA ...............................................................................................................4, 5

**Other Authorities**

29 C.F.R. § 1620.9(b) ..........................................................................................8

Federal Rules of Evidence Rule 802....................................................................20

Rule 30(b)(6) .......................................................................................................7

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................1

II.    COUNTER-STATEMENT OF FACTS ..............................................1

    A.   FGO's Management Structure ............................................................1

    B.   Hiring GMs and AGMs.......................................................................2

    C.   Determining Salaries for GMs and AGMs..........................................2

        1.   Setting Salaries at the Time of Hire........................................2

        2.   Setting Pay Raises ....................................................................3

III.   LEGAL STANDARD ..........................................................................4

IV.    ARGUMENT........................................................................................7

    A.   Plaintiffs Are Not Similarly Situated Because Plaintiffs Fail to
        Identify a Common Compensation Policy for the Proposed
        Nationwide Class.................................................................................8

        1.   Plaintiffs Fail to Overcome the Presumption of a Single
            Establishment ............................................................................8

        2.   Plaintiffs Have Failed to Provide a Modest Factual
            Showing That GMs and AGMs are Similarly Situated on
            a Nationwide Basis..................................................................13

    B.   Plaintiffs Are Unable to Show That They Were Subject To
        Wage Discrimination, Let Alone a Nationwide Collective ...............15

        1.   Plaintiff Jody Finefrock ...........................................................15

        2.   Plaintiff Julia Francis ...............................................................16

        3.   Former Plaintiff Susan Barninger .............................................17

        4.   Alleged Comparator Brandon Ridgway ...................................17

        5.   Alleged Comparator Michael De Rosa.....................................18

V.     CONCLUSION ..................................................................................21

I.    **INTRODUCTION**

Defendant Five Guys Operations, LLC ("FGO") respectfully requests the Court deny Plaintiffs Jody Finefrock's and Julia Francis' motion for conditional certification in its entirety because (1) Plaintiffs fail to demonstrate that all General Managers ("GM") and Assistant General Managers ("AGM") were subject to a uniform unlawful compensation policy; (2) they have no knowledge of how other proposed collective members outside of their district were compensated; (3) the evidence demonstrates that even Plaintiffs' themselves were no subject to wage discrimination based on gender.

II.   **COUNTER-STATEMENT OF FACTS**

A.    **FGO's Management Structure.**

FGO operates approximately 458 restaurants in 27 states. (Exhibit A, Declaration of Sara Ortiz ("Ortiz Decl."), ¶ 3) The restaurants are organized into 79 districts, with three to seven stores per district, and 12 areas, with approximately five districts per area. (*Id*. at ¶¶ 4-5; Exhibit B, Deposition of Sara Ortiz ("Ortiz Dep."), 38:10-14, 39:1-6). Each restaurant is run by a GM, who supervises AGMs and hourly employees and performs a variety of duties in his or her restaurant. (Ortiz Dep. 38:19-22). Each district is headed by a District Manager ("DM"), who supervises the GMs. (*Id*. at 38:7-14). Each area is headed by an Area Manager ("AM") or Director of Operations ("DO"), who oversees the DMs in his or her area. (*Id*. at 38:23-39:6). AMs report DOs, and DOs report to one of two

Senior Directors of Operations ("SDO"). (*Id*. at 39:18-21, 43:4-7). The SDOs report to the Vice President of Operations (VPO), Robert Kozura. (*Id*. at 43:20-24). As VPO, Kozura is responsible for overseeing the operations of all corporate-owned restaurants. (*Id*. at 43:20-44:8).

## B. Hiring GMs and AGMs.

GMs and AGMs are hired under two different circumstances. First, when a GM or AGM position opens, the DM for that district recruits and makes the hiring decision for each GM and AGM in each restaurant in his or her district. (Ortiz Decl. at ¶ 7; Ortiz Dep. 111:6-10). The hire is approved by the AM and/or DO and then approved by Kozura. (Ortiz Dep. 111:11-21, 113:1-4, 123:25-125:16). The DM communicates the hiring decision to the newly-hired or promoted GMs and AGMs. (Ortiz Decl., ¶ 8). Second, if a franchise restaurant is acquired by FGO, all employees at that restaurant are offered the same position with FGO. (Exhibit C ("Finefrock Dep.") 88:16-22; Exhibit D ("Francis Dep.") 40:17-41:12, 42:13-16; Ortiz Dep. 107:11-15; 108:19-110:16).

## C. Determining Salaries for GMs and AGMs.

### 1. <u>Setting Salaries at the Time of Hire</u>.

There are also two different processes for determining a GM's or AGM's salary at the time of hire. First, if an individual applies for an open GM or AGM position, the GM's or AGM's pay is usually set by the pay of the individual who previously held the position. (Ortiz Dep. 110:17-111:5; 113:1-4). FGO also relies

on local comp comparisons and looks at what other local business are paying to determine rates for a store. (*Id*. at 107:16-20).   Second, when FGO acquires a franchise store, the employee is brought on at the rate they were making at the franchise store. (Ortiz Dep. 107:11-15; 108:19-110:16; Francis Dep. 18:4-7, 40:17-42:16; Finefrock Dep. 88:16-22).

At bottom, salaries for the GM and AGM positions are set by the DM, using the processes above. (Ortiz Decl., ¶¶ 7, 9). As with hiring decisions, the salary is approved by the AM and/or DO and then approved by Kozura. (Ortiz Dep. 111:11-21, 113:1-4, 123:25-125:16). There is no written policy regarding how to set initial salaries, (Finefrock Dep. 52:18-53:4), or a set range of pay for specific positions. (Ortiz Dep. 113:1-4).

2.   Setting Pay Raises.

A GM or AGM may be given a raise annually and/or if they receive a promotion. (Ortiz Decl., ¶ 10). As noted above, if an employee applies for an open GM or AGM position, the GM's or AGM's pay is usually set by the pay of the individual who previously held the position-the same process as a new hire. (Ortiz Dep. 110:17-111:5; 113:1-4).

DMs conduct performance evaluations for both the GM and AGM positions. (Ortiz Dep. 80:22-81:3 Ortiz Decl., ¶ 11). There is an objective and subjective component to each performance evaluation. (Ortiz Decl., ¶ 12). The GM and AGM

positions are evaluated based on the success of the store. (Ortiz Dep. 87:1-12). However, a store's success metrics are not uniform throughout the country; instead they are determined on a store-by-store basis. (*Id*.). An employee's performance can impact pay increases. (*Id*. at 82:7-83:14). FGO provides DMs with a yearly budget for pay raises, and then DMs have discretion to set salaries for GMs and AGMs within that budget. (Ortiz Decl., ¶ 13; *see also*, Exhibit E ("Miley Decl.") at Exhibit 6, Defendant's Responses to Plaintiffs' First Set of Interrogatories, Interrogatory No. 15). FGO provides no guidance as to how DMs should set raises for GMs and AGMs. (Ortiz Decl., ¶ 15). The raise is communicated to the GM or AGM by the DM. (*Id*. at ¶ 16).

Notably, VPO Kozura is not involved in setting pay rates of any kind for GMs or AGMs. (Ortiz Dep. 111:25-112:8). Morever, there is no evidence that Kozura has ever rejected or changed any salary requests for GMs or AGMs. (Exhibit F ("Cook Decl."), ¶ 8; Exhibit G ("Lekki Decl."), ¶ 7; Exhibit H ("Chaves Decl."), ¶ 8). Nor does he provide substantive input into those decisions. *Id*.

## III.   LEGAL STANDARD

The FLSA does not mandate notice to potential class members in a collective action. Rather, the Supreme Court has authorized district courts to conditionally certify and send notice only "in appropriate cases." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (courts should exercise discretion

authorize notice only "in appropriate cases," where the "judicial system [would] benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged…activity"). This discretion is not "unbridled," and although "[c]ourt intervention in the notice process for case management purposes" is an appropriate use of the court's power, "the **solicitation** of claims" is not, and "courts must be scrupulous to respect judicial neutrality." *Hoffmann-La Roche Inc.*, 493 U.S. at 174 (emphasis added).

Before a court may exercise its discretion to conditionally certify an FLSA collective action and authorize notice to individuals who have not themselves chosen to participate in litigation, the Third Circuit requires the plaintiff to make a "modest factual showing" that she is "similarly situated" to the other individuals in the proposed collective. *Camesi v. University of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2012). To be "similarly situated" to the other workers, Plaintiffs must "produc[e] some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193; *Gordon v. Maxim Healthcare Servs.*, Inc., 2014 WL 7008469, at *1-2 (E.D. Pa. Dec. 11, 2014) (courts may consider the "totality of the record available"), class decertified by

*Gordon v. Maxim Healthcare Servs.*, Inc., 2017 WL 3116153 (July 21, 2017).

A motion for conditional certification must be supported by **credible and admissible evidence**, and notice is not appropriate if the evidence demonstrates that a trial would require "an employee-by-employee" analysis of their claims. *Hall v. Guardsmark, LLC,* No. 2012 WL 3580086, at *12-13 (W.D. Pa. Aug. 17, 2012); *Bramble v. Wal-Mart Stores, Inc.*, 2011 WL 1389510, at *8 (E.D. Pa. Apr. 12, 2011); *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2009 WL 1515175, at *4 (W.D. Pa. June 1, 2009) (court could only consider admissible evidence in deciding motion for conditional certification under section 216(b)). Courts should deny conditional certification where "an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Bramble*, 2011 WL 1389510, at *3-4.

While Plaintiffs observe that some courts apply a "lenient" standard when considering a motion for conditional certification, this "lenient" standard is only appropriate when discovery has not progressed by the time the motion is filed. *See Morisky v. Public Service Elec. & Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000); *Marcus v. American Contract Bridge League*, 254 F.R.D. 44, 47 (D. Conn. 2008). "[W]here, as here, discovery has commenced, and the parties submit deposition testimony, declarations, and other evidence in support of their respective positions … the more stringent test is appropriate" and "[m]ere allegations are not

sufficient." *Bramble*, 2011 WL 1389510, at *4. The "more stringent test" requires the Court to examine the "**totality of the record available**" to "determine whether the plaintiff has met … her burden" of demonstrating a "factual nexus between the manner in which [FGO's] alleged policy affected [Plaintiffs] and the manner in which it affected other employees." *Gordon*, 2014 WL 7008469, at *2 (emphasis added); *Symczyk*, 656 F.3d at 193.

Plaintiffs propounded 36 requests for production of documents, and 18 interrogatories. (Exhibit H ("Miley Decl.") at Exhibits 1-4). Plaintiffs also took a Rule 30(b)(6) deposition, which covered nine topics. (Miley Decl. at Exhibit 5). Therefore, substantial discovery has occurred and the "lenient standard" advanced by Plaintiffs is no longer applicable. Instead, the Court should "apply a stricter standard in its analysis" of their motion. *See Williams v. Owens & Minor, Inc.*, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) ("Where discovery has commenced, and the parties submit deposition testimony, declarations, and other evidence … application of the more stringent test is appropriate").

## IV.   ARGUMENT

Plaintiffs have not met their burden to establish that the Court should conditionally certify this matter as a collective action and issue notice to all GMs and AGMs who worked for FGO nationwide. Specifically, Plaintiffs have not made even a "modest factual showing" sufficient to demonstrate that they and

potential opt-in plaintiffs were either (a) subject to a common compensation policy or (b) were likely to have been discriminated against on the basis of their gender.

**A.    Plaintiffs Are Not Similarly Situated Because Plaintiffs Fail to Identify a Common Compensation Policy for the Proposed Nationwide Class.**

      1.    Plaintiffs Fail to Overcome the Presumption of a Single Establishment.

The EPA prohibits employers from discriminating against an employee **within the same establishment** on the basis of sex by paying members of the opposite sex higher wages for equal work. 29 U.S.C. ¶ 206(d)(1).

The term "establishment" has repeatedly been held to refer to "a distinct physical place of business" and not to an entire business or enterprise. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 496 (1945); *see also Mitchell v. Bekins Van & Storage Co.,* 352 U.S. 1027 (1957) (per curiam) (holding that five physically separate warehouses located in the same city were separate establishments). The EEOC has adopted the geographical meaning of the term "establishment" for purposes of the EPA. The EEOC recognizes that only in "unusual circumstances," does the geographical rule potentially give way allowing for two distinct places of business may be treated as a single establishment. 29 C.F.R. § 1620.9(b).

On March 31, 2017, the Court denied Defendant's Motion to Dismiss Count I of Plaintiffs' Complaint.  Although the Court recognized the general rule construing "establishment" to mean a separate place of business, it denied

Defendant's Motion because Plaintiff pleaded in the Complaint the conclusory statement that (1) Defendant "runs its restaurants in a strict top down hierarchical structure, with centralized control of its employees, which includes hiring and wage decisions," (ECF No. 28, p. 7 (quoting ECF No. 1 at ¶ 14)); and (2) "instructions to area and district managers regarding wage rates and labor budgets come directly from Defendant's Chief Financial Officer." (ECF No. 28, pp. 7-8 (citing ECF No. 1 at ¶¶ 16-17)). Discovery on this matter has shown, however, that Plaintiffs have never had any evidence to support those allegations.

Plaintiffs do not address the establishment issue in their brief.  Instead, Plaintiffs rest their entire Motion on the erroneous allegation that, "From 2013 to the present, one man, Five Guys Vice President of Operations Robert Kozura, has had the sole authority and discretion to hire and set wages for the General Manager and Assistant General Manager positions at every Five Guys restaurant in the country." (ECF No. 43 at 13).  **<u>This statement is false</u>**.

Since the filing of their Complaint, Plaintiffs have attempted to magically conjure a dictatorial compensation policy overseen by one man – VPO Kozura.  As noted by this Court, Plaintiffs alleged that Defendant maintains "centralized control" over its employees, and that the company's CFO directly determines wage rates for GMs and AGMs. (ECF No. 1 at ¶¶ 14, 16-17). Plaintiffs' deposition testimony, however, made clear that Plaintiffs do not believe their compensation is

determined by one centralized body.

When asked about these allegations in her Complaint, Francis testified that these averments meant her DM, Andy Cook made the compensation decisions. (Francis Dep. 65:8-67:9). When asked who she deemed to be part of FGO's "top executive leadership," she named Cook and her AM, Fred Chaves. (*Id*. at 65:8-67:9).

Finefrock testified that she did not know who made the decision as to amount of her annual raise. (Finefrock Dep. 82:17-85:13). She testified that Cook would communicate her raise to her, but she had no knowledge as to how it was determined. (*Id*. at 85:1-13).

Clearly, Plaintiffs have no evidence or knowledge of FGO's "Chief Financial Officer" making all wage decisions. To the contrary, they both testified that they were unsure of the process and correctly identified their DM as the individual setting their wages.

Plaintiff's Brief in Support of their Motion is similarly unsupported. As noted above, Plaintiffs make the bald statement that VPO Kozura "has had the sole authority and discretion to hire and set wages for the General Manager and Assistant General Manager positions at every Five Guys restaurant in the country." (ECF No. 43, p. 13). In support of this allegation, Plaintiffs cite to **<u>contradicting</u>** testimony from Defendant's Vice President of Human Relations, Sara Ortiz.  Ortiz

testified that VPO Kozura is **<u>not</u>** involved in searching for candidates to hire or setting their salaries. (Ortiz Dep. 111:25-112:5). She further testified that VPO Kozura does not make changes to or scrutinize requested raises for GMs or AGMs. (Ortiz Dep. 105:11-25). This testimony is corroborated by Plaintiffs' supervisors. (Cook Decl., ¶ 8; Lekki Decl., ¶ 7; Chaves Decl., ¶ 8) Despite Ortiz's testimony, Plaintiff distorts her statements and makes an unfounded claim that Kozura has all-encompassing "wage-setting authority." (ECF No. 43, p. 13).

Ortiz specifically testified as to how the GM and AGM wages were set, and explicitly stated that VPO Kozura did not set wages, nor did he scrutinize or make changes to raise requests. (Ortiz Dep. 105:11-25). To be sure, the literal "rubber stamping" nature of Kozura's approval is well illustrated in the following exchange about an offer letter request form:

**Q. ... Who submits the form?**

A. The hiring manager, the district manager for the GM position.

**Q. And to whom does he submit the form, he or she?**

A. It's submitted -- well, it's submitted to the HR department to draft the offer letter.

**Q. And if you look at the bottom of the page, there's a signature above the signature line for Bob Kozura. Do you see that?**

A. Yes.

**Q. And do you understand that to be Mr. Kozura's signature?**

A. Yes. It's the stamp of a signature.

**Q. But that's his name?**

A. Yes. Yes.

**Q. Okay. So what I want to understand is how does the -- the process works, my understanding, is you -- strike that. The district manager submits the form to Human Resources, right?**

A. Um-hmm.

**Q. And then what does Human Resources do?**

A. Well, he submits it to -- he either submits it directly to HR, cc'ing Bob, or he – it gets submitted to Bob, and then Bob's assistant bumps it over to us.

**Q. And when you say Bob, you mean Bob Kozura?**

A. Sorry. Bob Kozura. Yes.

**Q. And so before Human Resources can move forward with the offer letter, what needs to happen?**

A. We have -- Bob has to give his approval.

**Q. And how is that done, by -- does he have to sign something, or does he e-mail you, or how does that work?**

A. Normally his -- his assistant has compiled the paperwork, and he signs it. Sometimes she just stamps off on it.

(*Id*. at 123:25-125:16 and Ex. 17 at FGO 12). Indeed, VPO Kozura testifies that he never changes the compensation on offer letters, and he cannot recall a time when he changed a raise request for a GM or AGM. (Exhibit I ("Kozura Decl."), ¶¶ 5, 7).

Extensive discovery regarding Defendant's compensation structure has identified no evidence that FGO exercised the "centralized control" necessary to overcome the presumption of the EPA's single establishment provision. There is no evidence that FGO hired employees through a central office; that VPO Kozura set wages for GMs or AGMs; or that GMs or AGMs frequently change work locations, particularly outside of their district.

At most, the evidence shows that Kozura had to approve requested compensation decisions for GMs and AGMs, but that his practice was to accept the decisions made by the DMs. This does not set FGO apart from most corporations or establish the "unusual circumstances" necessary to justify treating all of FGO's restaurants as a single "establishment" for purposes of the EPA. As noted by the court in *Renstrom v. Nash Fish Co.*,

> Far from being "unusual," the features to which [Plaintiffs] point[]—a corporation's ultimate oversight over compensation and personnel decisions—are commonplace. If such facts were sufficient to overcome the "ordinar[y]" and "well settled" rule that physically distinct locations are different "establishments" for purposes of the EPA, then just about any corporation with a hierarchical management structure and a functioning human-resources department would find itself defined as a single "establishment."

787 F.Supp.2d 961, 965 (D. Minn. 2011).   Given the clear definition of "establishment" within the EPA, this Court should not permit Plaintiffs to pursue a nationwide collective action with absolutely no evidence to support such an assertion.

 2.   Plaintiffs Have Failed to Provide a Modest Factual Showing That GMs and AGMs are Similarly Situated on a Nationwide Basis.

In order to make a "modest factual showing," Plaintiffs must "produc[e] some evidence, '**beyond pure speculation**,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it

affected other employees." *Symczyk*, 656 F.3d at 193. (emphasis added). In other words, Plaintiffs must show that "'similarly situated' plaintiffs do in fact **exist**," *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536, n.4 (3d Cir. 2012) (emphasis added).

As described above, Plaintiffs have produced no compelling evidence that GMs and AGMs across the nation are similarly situated, or that similarly situated individuals exist outside of Plaintiffs' district. Instead, they have mischaracterized and ignored both Ortiz's deposition testimony and their own. (*See also* Kozura Decl.). Ortiz further testified that there was no uniform compensation policy that DMs are required to follow when establishing compensation for GMs and AGMs. (Ortiz Dep. 107:1-20; 114:1-7).

The Supreme Court opined in *Hoffmann-La Roche Inc.* that the notice process should **not** be used for the **solicitation** of claims. 493 U.S. at 174.  That is exactly what Plaintiffs are attempting to do here. Plaintiffs have been unable to articulate how FGO sets their compensation, have not identified anyone outside their district that they believe was subject to wage discrimination, nor have they submitted any declarations of employees outside their district supporting their nationwide allegations.  To be sure, Francis specifically admitted that she had no knowledge of anyone's wages outside of her district. (Francis Dep. 79:12-80:4). Despite this lack of knowledge, Plaintiffs wish to **solicit** additional claims of

unfounded discrimination by using a nationwide notice process. The breadth of such a notice is inappropriate and should be rejected.

The totality of the record shows that Plaintiffs' request to conditionally certify this class on a nationwide basis is based purely on conjecture. There is no evidence that a central body was setting GM and AGM compensation nationwide. Moreover, Defendant's 30(b)(6) testimony, discovery responses and corresponding declarations demonstrate that hiring decisions and compensation was determined and set by the DMs. These determinations – which were submitted for hundreds of GMs and AGMs – were eventually approved without changes by VPO Kozura. The Court should not allow permit notice based on pure speculation.

**B.     Plaintiffs Are Unable to Show That They Were Subject To Wage Discrimination, Let Alone a Nationwide Collective.**

Through discovery, Plaintiffs have alleged to have knowledge of salaries for five individuals – the two current Plaintiffs Finefrock and Francis, former Plaintiff Susan Barninger, and alleged comparators Brandon Ridgway and Michael De Rosa.[1] The following is a summary of their compensation while AGMs and/or GMs for FGO.

**1.     Plaintiff Jody Finefrock**

On or around February 6, 2013, Finefrock was promoted to AGM.

---

[1] Francis claims that she had an AGM that worked for her with the first name "James" and the middle name "Tyler." FGO has no record of an AGM that worked with Francis with either a first name "James" or a middle name "Tyler."

(Finefrock Dep. 35:16-19). Her salary was $30,000. (*Id*. at 36:1-3). Her salary was set by Andy Cook. (*Id*. at 44:16-22). On August 12, 2013, Finefrock was promoted to GM and transferred to the Haines Road Store (Store #62) ("Haines Road") in York, Pennsylvania. (*Id*. at Ex. 2 at FGO 12). Her salary was increased to $38,000. (*Id*.). In or around August 2014, Finefrock was given a raise to $38,950. (*Id*. at 40:11-22). On February 9, 2015, Finefrock was transferred back to the High Point store. (Finefrock Dep. 39:13-19). On June 26, 2015, Finefrock was placed on a Performance Improvement Plan ("PIP") (*Id*. at Ex. 11). Finefrock failed to meet the requirements of the plan, and on September 1, 2015 her employment with FGO was terminated.  (*Id*. at Ex. 12).

2. <u>Plaintiff Julia Francis</u>

On May 15, 2012, Francis was hired by FGO as GM of the Jonestown store (Store #257) ("Jonestown") in Harrisburg, Pennsylvania. (Francis Dep. at Ex. 18) She was working at a franchised store that FGO reacquired and was brought on in the same position at the same salary, $38,000. (*Id*. at 40:17-41:12, 42:13-16; Ortiz Dep. 107:11-15; 108:19-110:16).

In May 2014, Francis received a raise to $40,413.00. (Francis Dep. 45:8-16, 101:16-20 & Ex. 22). On November 17, 2014, Francis was transferred to the High Point store (Store #203) in Harrisburg, Pennsylvania. At or around this time, Francis was placed on a PIP. (*Id*. at Ex. 19). Francis remained a GM with FGO

until she voluntarily left her employment with the Company on February 9, 2015. (*Id*. at 20:1-4).

### 3.    Former Plaintiff Susan Barninger

Former Plaintiff Susan Barninger ("Barninger") was hired by FGO on May 15, 2012 as a GM for the Mechanicsburg store. (Ortiz Decl., ¶ 18). Her starting salary was $37,000.  *Id*.  Barninger's salary was increased to $40,014, and then to $41,514 on July 29, 2013. (*Id*. at ¶ 19). Barninger received an additional raise to $42,966.82, and then another to $43,966.82 on November 3, 2014. (*Id*. at ¶ 20).

On August 10, 2015, Barninger was transferred to the Jonestown store. (*Id*. at ¶ 21). She was given a raise to $44,956.00.  (*Id*. at ¶ 22).  Barninger voluntarily terminated her employment on September 7, 2015. (*Id*. at ¶ 23).

### 4.    Alleged Comparator Brandon Ridgway

On August 20, 2012, Brandon Ridgway was hired by FGO as the AGM of the High Point store.  (Ortiz Decl., ¶ 25.  His salary was $34,000. (*Id*. at ¶ 26).  On September 10, 2012, he was transferred to the Jonestown store. (*Id*. at ¶ 27). His salary remained the same. *Id*. During this time period, his GM was Plaintiff Francis.

On March 25, 2013, Ridgway was promoted to General Manager of the Hanover, Pennsylvania store (Store #1427). (Ortiz Decl., ¶ 28). He received a raise to $40,000. (*Id*. at ¶ 29). On November 17, 2014, Ridgway's salary was increased

to $40,899.00. (*Id*. at ¶ 30). On February 15, 2015, Ridgway voluntarily terminated his employment with FGO. (*Id*. at ¶ 31).

### 5.   Alleged Comparator Michael De Rosa

Michael P. De Rosa was hired by FGO as an AGM on or around May 7, 2013. (Ortiz Decl., ¶ 33).  His starting salary was $35,000 and he was located at the Mechanicsburg store. (*Id*. at ¶ 34). On June 17, 2013, De Rosa was transferred to Jonestown. (*Id*. at ¶ 35). During this time period, his GM was Plaintiff Francis.

On October 7, 2013, De Rosa was transferred to York Town Center. (Ortiz Decl., ¶ 36). In or around October 14, 2013, he was promoted to GM and given a raise to $38,000. (*Id*. at 37). On August 3, 2015, De Rosa's salary was $39,545. (*Id*. at 38). His salary remained the same until his involuntary employment termination on March 11, 2016. (*Id*. at 39).

All of these individuals were employed in the same district while employed by FGO as GMs and AGMs. Until April 2015, Andy Cook was their DM and Fred Chaves was their AM. (Finefrock Dep. 37:15-21, 38:21-39:1; Francis Dep. 32:21-33:18). After that, Judy Lekki took over as Director of Operations (replacing Chaves as AM), and Donnie Smith and then Troy Krout took over the position of DM. (Finefrock Dep. 37:20-38:17).

Below is graph summarizing the compensation history of these individuals:

18



As the graph shows, Finefrock (female) and De Rosa (male) have similar compensation histories; Ridgway (male) and Francis (female), who were paid slightly more, had similar compensation histories; and Susan Barninger (female) made notably more than any of the Plaintiffs or alleged comparators. This wage evidence shows no inference of wage discrimination.

A motion for conditional certification must be supported by **credible and admissible evidence**, *Hall*, 2012 WL 3580086, at *12-13 (emphasis added). The record evidence shows that Plaintiffs' testimony regarding comparator wages is neither admissible nor credible. First, both Finefrock and Francis testify that they either (a) were told by the comparators what their compensation was, or (b) saw it in an alleged email sent out by then-DM Andy Cook. Conversations with the

comparators are hearsay and not admissible evidence under Rule 802 of the Federal Rules of Evidence. Furthermore, Plaintiffs cannot rely on a document of which there is no evidence of its existence or contents.

Moreover, the testimony that Plaintiffs did provide is not credible. For example, Plaintiff Francis testified that Ridgway and another AGM who worked under her, made $42,000 *while they were AGMs* for FGO. (Francis Dep. 52:13-53:1). Record evidence makes clear that this statement is erroneous. Ridgway made $34,000 the entire time he was an AGM for FGO, and De Rosa – who we believe is the other AGM Francis is referencing – made $35,000 the entire time he was an AGM. (Ortiz Decl. ¶¶ 25-28, 33-37). When they were promoted, Ridgway made $38,000 and De Rosa made $40,000. *Id*. Given that Francis' testimony is markedly different from the actual facts of this case, her unsupported assertions as to how much her male counterparts were paid is not credible with regard to her own claim, and should not be extrapolated to every GM and AGM nationwide.

Additionally, when Finefrock complained to DM Cook that she was being paid less as an AGM than Ridgway and De Rosa, they were all promoted and given commensurate salaries. (Finefrock Dep. 55:22-57:12). Moreover, as Plaintiffs acknowledge, they were both on PIPs at the end of their employment with FGO, evidencing the fact that they were not strong performers. (Finefrock Dep. at Ex. 11; Francis Dep. 36:20-38:6).

At bottom, Plaintiffs cannot provide a modest factual showing that they were subject to wage discrimination, let alone purport to represent a nationwide class based on that evidence. Accordingly, Plaintiffs motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Conditional Certification.

Respectfully submitted,


*/s/ Sarah J. Miley*

Theodore A. Schroeder (PA #80559)
tschroeder@littler.com
Emilie R. Hammerstein (PA #307499)
ehammerstein@littler.com
Sarah J. Miley (PA #314830)
smiley@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7624/7631/7669
412.774.1959/3756 (fax)

Attorneys for Defendant
Five Guys Operations, LLC

Dated:  December 13, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of December 2017, a copy of

**Defendant's Opposition to Plaintiffs' Motion for Conditional Certification** was

filed using the Middle District of Pennsylvania's ECF system, through which this

document is available for viewing and downloading, causing a notice of electronic

filing to be served upon the following counsel of record:

>Larry A. Weisberg
>lweisberg@mwcfirm.com
>Derrek W. Cummings
>dcummings@mwcfirm.com
>McCarthy Weisberg Cummings, P.C.
>2041 Herr Street
>Harrisburg, PA  17103
>
>George A. Hanson
>hanson@stuevesiegel.com
>Alexander T. Ricke
>ricke@stuevesiegel.com
>460 Nichols Road, Suite 200
>Kansas City, MO  64112

>*/s/ Sarah J. Miley*
>Sarah J. Miley