IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JODY FINEFROCK and JULIA FRACIS, individually and on behalf of a collective of others similarly-situated,** : : : : : | Civil No. 1:16-CV-1221 |
| **Plaintiffs,** : : | |
| v. : : | |
| **FIVE GUYS OPERATIONS, LLC,** : : | |
| **Defendant.** : | Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

In this civil action, two female restaurant managers assert individual and collective violations of the Equal Pay Act, 29 U.S.C. § 206, *et seq.*, claiming that they were paid less than male restaurant managers by Defendant Five Guys Operations, LLC. Presently before the court is Plaintiffs' motion for conditional collective action certification under 29 U.S.C § 216(b). For the reasons that follow, the motion will be granted.

**I.     Factual Background**

Plaintiffs' Jody Finefrock ("Plaintiff Finefrock") and Julia Francis ("Plaintiff Francis") filed their amended complaint on January 31, 2018, asserting claims individually and on behalf of a collective of others similarly situated. (Doc. 47.) The single count amended complaint asserts violations of the Fair Labor Standards Act of 1938 ("FLSA"), as amended by the Equal Pay Act of 1963 ("EPA"),

alleging that Defendant Five Guys Operations, LLC ("Five Guys") discriminated against Plaintiffs and members of the collective action class by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and were performed under similar working conditions.[1] (*Id.* ¶ 74.) Specifically, Plaintiffs assert that corporate-owned Five Guys restaurants maintain centralized control over its employees, including hiring and wage decisions, and utilizes a "rigid top down, hierarchical corporate structure," which results in wage discrimination. (*Id.* ¶ 17.)

### A. **Five Guys corporate structure and hiring practices**

Five Guys corporate-owned restaurants are divided into "areas," and each area is divided into "districts." (Doc. 44-1, p. 2 of 26.) Each restaurant is run by a General Manager, who supervises the Assistant General Managers and hourly employees as well as the day-to-day operations in that restaurant. (Doc. 43-2, p. 3 of 59.) The General Managers are supervised by District Managers, who oversee three to seven restaurants within their district and all operations tied to those stores. (*Id.* at p. 9 of 59.) Area Managers or Directors of Operations oversee all of the District Managers in that particular area, which contain about five districts. (*Id.* at p. 10 of 59.) The Area Managers report to a Director of Operations, and Directors of Operations report to one of two Senior Directors of Operations. (*Id.* at 10, 13 of

---

[1] Plaintiffs also set forth class action allegations under Federal Rule of Civil Procedure 23. (Doc. 47, ¶¶ 53-70.) As Plaintiffs' motion *sub judice* is not regarding class action certification, the court will not discuss those allegations and facts.

59.) Finally, the Senior Directors of Operations report to Robert Kozura, Vice President of Operations, who is responsible for overseeing the operations of all Five Guys corporate-owned restaurants. (*Id.* at 13 of 59.)

Sara Ortiz, Five Guys' Vice President of Human Resources, testified as the company's corporate representative that all General Managers throughout the country had the same job description, essential duties, and responsibilities, and required the same qualifications, education, and experience. (*Id.* at 19-20 of 59.) Likewise, the Assistant General Managers throughout the country have the same job description and responsibilities.[2] (*Id.* at 25-27, 29 of 59.) Additionally, all General Managers and Assistant General Managers must follow the same nationwide policies and procedures as outlined in the employee handbook provided by Five Guys corporate management. (*Id.* at 36 of 59.) The General Managers and Assistant General Managers are also evaluated using a standard set of "key metrics," and all General Managers are eligible for the Five Guys bonus program. (*Id.* at 38-39, 48 of 59.)

Five Guys utilizes two processes for determining the salary of General Managers and Assistant General Managers at the time of hiring without the use of written policies for determining initial salaries or established pay scales for specific

---

[2] Ms. Ortiz testified that there might be a slight difference in job descriptions for Assistant General Managers and General Managers in the state of California due to certain state laws requiring meal breaks. (Doc. 43-2, pp. 27-29 of 59.)

positions. (Doc. 44-2, pp. 16-19 of 65.) An individual hired for an open General Manager or Assistant General Manager position at a corporate-owned Five Guys is generally paid the same salary as the person who previously held the position. (*Id.*) After Five Guys acquires a franchise store, the employee working as the General Manager or Assistant General Manager of the franchise store is hired by the corporate-owned Five Guys at the same salary. (*Id.* at 14-15 of 65.) The District Manager sets these salaries, as well as any raises or promotions, which requires approval via an "offer letter request form" from the Area Manager and Director of Operations. (*Id.* at 17, 21-22 of 65.) Mr. Kozura, Vice President of Operations, must approve the final salary before the offer letter is provided to the General Manager or Assistant General Manager candidate or employee. (*Id.* at 17-19, 22-23 of 65.) District Managers are also provided with a yearly budget for raises, which they can discretionarily use to provide raises for General Managers and Assistant General Managers under the same offer letter request form process.[3] (*Id.*; Doc. 44-1, p. 3 of 26.)

### B. **Plaintiff Finefrock's employment**

From July 2012 through September 2015, Plaintiff Finefrock worked at various Five Guys corporate-owned locations. (Doc. 43-14, p. 4 of 15.) On February 6, 2013, she became an Assistant General Manager earning an annual

---

[3] An employee's performance may impact the ability to receive a raise or promotion each year, as well as the raise amount. (Doc. 44-2, p. 9 of 65.)

salary of $30,000. (*Id.* at 5-7 of 16; Doc. 44-3, p. 22 of 33.) On August 12, 2013, Plaintiff Finefrock was promoted to General Manager with an annual salary of $38,000 per year and transferred to the Haines Road Store in York, Pennsylvania. (Doc. 44-3, pp. 8, 20 of 33.) Around August 2014, she was given a raise to $38,950 per year and on February 9, 2015, Plaintiff Finefrock was transferred to the High Point store in Harrisburg, Pennsylvania. (*Id.* at 6-7 of 33.) Shortly thereafter, on June 26, 2015, Plaintiff Finefrock was placed on a Performance Improvement Plan. (*Id.* at 31-32 of 33.) Five Guys terminated Plaintiff Finefrock's employment on September 1, 2015, citing the cause as a failure to meet the requirements of her Performance Improvement Plan. (*Id.* at 33 of 33.)

### C. **Plaintiff Francis' employment[4]**

Plaintiff Francis was working as a General Manager with an annual salary of $38,000 at the Jonestown franchise store when Five Guys reacquired it. (Doc. 44-4, pp. 10-11, 23 of 29.) She was hired by the corporate-owned store on May 15, 2012, in the same position and salary. (*Id.*) In May 2014, Plaintiff Francis received a raise to $40,413. (*Id.* at 13, 21 of 29.) She was subsequently transferred to the High Point store in Harrisburg, Pennsylvania on November 17, 2014. (*Id.* at 24 of

---

[4] Five Guys outlines the employment history, including salary details, of former Plaintiff Susan Barninger. (Doc. 44, p. 21 of 26.) As Ms. Barninger voluntarily dismissed her claims on June 30, 2017 (Doc. 37), the court will not consider her employment history for purposes of this conditional certification.

29). In February 2015, Plaintiff Francis voluntarily left employment with Five Guys. (*Id.* at 4 of 29.)

### D. <u>Alleged male comparators</u>

During the time Plaintiff Finefrock and Francis were employed by Five Guys, both learned that Brandon Ridgeway ("Ridgeway"), a male Assistant General Manager that was promoted to General Manager, earned $35,000 and $42,000, respectively. (Doc. 43-14, pp. 10-12 of 15; Doc. 43-15, p. 11 of 16.) Five Guys avers that Ridgeway was hired on August 20, 2012, as the Assistant General Manager of the High Point store with a salary of $34,000. (Doc. 44-1, p. 14 of 26.) On September 10, 2012, he was transferred to the Jonestown store where his General Manager was Plaintiff Francis. (*Id.* at 15 of 26.) On March 25, 2013, Ridgway was promoted to General Manager of the Hanover, Pennsylvania store, with a raise to $40,000. (*Id.* at 16-17 of 26.) Ridgway received another raise to $40,899 on November 17, 2014. (*Id.* at 18 of 26.) He voluntarily left Five Guys on February 15, 2015. (*Id.* at 19 of 26.)

Plaintiffs also learned about a male General Manager named James Tyler (last name unknown) who reportedly earned between $41,000 and $42,000 according to Plaintiff Francis, and $55,000 according to Plaintiff Finefrock.[5] (Doc. 43-14, pp. 13-14 of 15; Doc. 43-15, pp. 12-13 of 16.) According to Five Guys,

---

[5] It appears that Plaintiffs Finefrock and Francis are referring to the same person but refer to this individual as "Tyler" versus "James Tyler," respectively. (*See* Doc. 43-14, pp. 13-14 of 15; Doc. 43-15, pp. 12-13 of 16.)

there is no record of an employee with the first name "James" and middle name "Tyler," who worked with either Plaintiff.

Separately, Plaintiff Finefrock learned that Michael De Rosa ("De Rosa"), a male Assistant General Manager, was paid $35,000. (Doc. 43-14, pp. 10-12 of 15.) Five Guys states that De Rosa was hired on May 7, 2013, with a starting salary of $35,000, in the Mechanicsburg store. (Doc. 44-1, p. 21 of 26.) On June 17, 2013, he was transferred to the Jonestown store where Plaintiff Francis was his General Manager. (*Id.* at 22 of 26.) De Rosa was subsequently transferred to the York Town Center store and promoted to General Manager on October 14, 2013, with a salary of $38,000. (*Id.* at 23-24 of 26.) At some point prior to August 10, 2015, the date De Rosa was demoted from a General Manager to Assistant General Manager, he received a raise to $39,545. (*Id.* at 25 of 26.) Five Guys terminated De Rosa on March 11, 2016. (*Id.* at 26 of 26.)

## II.     **Procedural History**

Plaintiffs initiated this lawsuit by filing a complaint on June 21, 2016, which Five Guys answered on August 12, 2016. (Docs. 1-2.) Contemporaneously to filing the answer, Five Guys also submitted a motion to dismiss arguing that Plaintiffs failed to adequately plead that separate Five Guys restaurants are a single establishment for purposes of the Equal Pay Act, and that Plaintiffs failed to name specific male comparators who allegedly received higher pay. (*See* Doc. 22, pp. 3-

7.) On March 31, 2017, the court denied Defendant's motion (Docs. 28-29), and Defendant thereafter filed an amended answer (Doc. 36). Following limited discovery, Plaintiffs' filed their motion for conditional collective action certification and brief in support. (Docs. 42-43.) The motion has been fully briefed and is ripe for disposition. Meanwhile, Plaintiffs' filed an amended complaint on January 31, 2018 (Doc. 47), which Defendant answered on February 14, 2018 (Doc. 48).

### III. Legal Standard

The Fair Labor Standards Act ("FLSA") added the Equal Pay Act ("EPA")[6] as an amendment based on "the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974). "Section 16(b) of the FLSA gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified

---

[6] The EPA provides:
> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

violations of the FLSA. A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "Similarly situated" is not defined within the FLSA, but the Third Circuit has established a two-step approach for certifying FLSA collective actions. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

In the first step, the court determines whether the employees enumerated in the complaint can be categorized as similarly situated. *Id.* at 192; *see also Chung v. Wyndham Vacation Resorts, Inc.*, No. 14-cv-490, 2014 WL 4437638, *1 (M.D. Pa. Sept. 9, 2014). Plaintiffs are considered similarly situated by making a "modest factual showing," i.e. some evidence "beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193 (citing *Smith v. Sovereign Bancorp., Inc.*, No. 03-cv-2420, 2003 WL 22701017, *3 (E.D. Pa. Nov. 13, 2003)); *see also Zavala v. Wal Mart Stores Inc.* 691 F.3d 527, 535-36 (3d Cir. 2012). "Mere allegations" are insufficient. *Bramble v. Wal-Mart Stores, Inc.*, 09-cv-4932, 2011 WL 1389510, *4 (E.D. Pa. Apr. 12, 2011). During this initial phase, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Moore v. Publicis Groupe SA*, No. 11-cv-1279, 2012 WL 2574742, *9 (S.D.N.Y. June 29, 2012)

(quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). If a plaintiff satisfies this initial burden, the court conditionally certifies the collective action for purposes of providing notice to potential members and allows for pretrial discovery. *Symczyk*, 656 F.3d at 192.

After discovery, the court delves into the second step of the process, which is less lenient, by making a "conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Id.* at 193. At this point, the collective action can be de-certified if the record shows that the plaintiffs are not similarly situated, and the opt-in plaintiffs' claims may be dismissed without prejudice. *Moore*, 2012 WL 2574742 at *9 (citing *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)). The standard for final certification is more stringent than the standard for conditional certification. *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012).

## IV. Discussion

Plaintiffs move for conditional certification of a collective action for their EPA claim, request that the court issue an order providing notice to the collective, and request that Plaintiffs' counsel be appointed as counsel for the conditionally certified collective. Plaintiffs submitted depositions of Sara Ortiz, Five Guys' Vice President of Human Resources, Plaintiff Finefrock, and Plaintiff Francis; several versions of the Assistant General Manager and General Manager job descriptions;

and multiple versions of the Five Guys' Employee Handbook.[7] Ms. Ortiz testified that all Assistant General Managers, regardless of location,[8] have the same job responsibilities, perform the same tasks, and require the same baseline qualifications. The same is true nationwide for the General Manager position.

Regarding compensation, while District Managers set forth the salary on the "offer letter request form," it is ultimately up to Mr. Kozura, the Vice President of Operations, to approve the starting salary or raise. Further, Five Guys readily admits it does not have any written policies, procedures, or guidelines for determining initial salaries or raises, or pay scales for each position. For these reasons, as well as this matter's factual similarity to other cases that were certified as conditional collective actions, Plaintiffs argue they have met their modest factual burden. *See Smith v. Merck & Co.*, No. 13-cv-2970, 2016 WL 1690087, *5 (D.N.J. Apr. 27, 2016) ("Plaintiffs have submitted sufficient information at this stage to show that the sales representatives were performing similar responsibilities."); *Kassman v. KPMG LLP*, No. 11-cv-3743, 2014 WL 3298884, *8 (S.D.N.Y. July 8, 2014) ("Plaintiffs have presented evidence that job responsibilities were generally the same across offices, compensation policies were

---

[7] Specifically, Plaintiffs submitted the January 2013, March 2013, and June 2015 Assistant General Manager and General Manager job descriptions as well as an undated, June 2013, and May 2015 employee handbook. *See* Docs. 43-3 – 43-11.

[8] With the possible exception of California, as stated in *supra* note 2.

firm-wide and ultimate compensation decisions were made by centralized leadership.").

In opposition, Five Guys substantially repeats its motion to dismiss position by arguing that the EPA only prohibits employers from discriminating against employees who work within the same establishment. Acknowledging that the court denied its motion because Plaintiffs pled the necessary facts to support a plausible claim for relief, Five Guys submits that now is the appropriate time to rule on the single establishment issue. Five Guys argues that Plaintiffs are not similarly situated because there is no evidence that it exercised the "'centralized control' necessary to overcome the presumption of the EPA's single establishment provision." (Doc. 44, p. 16.)

The EPA requires that employees work at the same "establishment," which is defined as "a distinct physical place of business rather than [] an entire business or 'enterprise' which may include several separate places of business." 29 C.F.R. § 1620.9(a). The EPA also carves out an exception, providing:

> unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment. For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.

*Id.* § 1620.9(b). Notwithstanding this, "there is limited authority that district courts must engage in the establishment analysis when considering the certification of a collective action under the EPA." *Moore*, 2012 WL 2574742 at *11 (citations omitted). Rather, this substantive analysis is better suited for the second step of the collective action process when the court can de-certify a collective if appropriate. *Id.* (citing *Collins v. Dollar Tree Stores, Inc.*, 788 F. Supp. 2d 1328 (N.D. Ala. 2011)). At this initial stage, Plaintiffs sufficiently provided a modest factual showing that Five Guys could be considered a single establishment under the EPA based upon the nationwide job descriptions and policies, the frequency that the named Plaintiffs transferred store locations, and the final compensation approval by a central office. However, the court can reexamine this issue in the future if a motion for decertification is filed.

Five Guys also argues that Plaintiffs have failed to provide a modest factual showing that General Managers and Assistant General Managers are similarly situated on a nationwide basis. While Five Guys lacks a uniform compensation policy, Ms. Ortiz outlined the use of uniform job responsibilities, tasks, and baseline qualifications. Despite this, Five Guys avers that Plaintiffs are unable to articulate how Five Guys sets compensation and have not identified anyone, or submitted a declaration from anyone, outside "their district" that was discriminated against. Thus, according to Defendant, Plaintiffs' request for

conditional certification is simply a means to solicit claims, which is not the proper use for the notice process.[9] Lastly, Five Guys submits that Plaintiffs cannot show that they were subject to wage discrimination based upon their wages and comparators' wages because it is not supported by "credible and admissible evidence." (Doc. 44, p. 23 of 26 (citing *Hall v. Guardsmark, LLC*, 2012 WL 3580086, *12-13 (W.D. Pa. Aug. 12, 2012).)[10]

The information submitted by Plaintiffs shows that Assistant General Managers and General Managers, respectively, had the same job descriptions and responsibilities, required the same baseline qualifications nationwide, and were paid less than some allegedly similarly situated males. Compensation decisions, although based initially on input from their District Managers, were finalized by a central, common office, i.e. Mr. Kozura, Vice President of Operations. Although

---

[9] In support of this assertion, Five Guys refers the court to *Hoffman-La Roche Inc. v. Sperling*, 193 U.S. 165 (1989). *Hoffman-La Roche* addressed "whether, in an ADEA action, district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought." *Id.* at 169. The Supreme Court held that district courts have the discretion to facilitate notice to potential plaintiffs, which is "distinguishable in form and function from the solicitation of claims." *Id.* at 174. Five Guys misapprehends this holding by equating the form opt-in notices sent to potential plaintiffs typical in collective action cases such as this one with solicitation of claims.

[10] The court notes that *Hall v. Gaurdsmark, LLC* used the sham affidavit doctrine in weighing evidence submitted by the plaintiffs and held that certain statements by plaintiffs would be disregarded. *Hall*, 2012 WL 3580086 at *12. The sham affidavit doctrine provides that "a court will disregard an affidavit that is inconsistent with an affiant's prior deposition testimony . . . unless the party relying on the affidavit in opposition to the motion can present a legitimate reason for the discrepancies between the deposition and the affidavit." *Id.* Here, Plaintiffs have not submitted affidavits in support of their conditional certification motion, thus, *Hall* is inapplicable.

the parties presented limited evidence of actual salaries, the information submitted shows that Plaintiffs Finefrock and Francis, at various times, earned less than their alleged male comparators. Because the focus of the inquiry at this conditional certification stage is not whether there was an actual violation of law, but rather whether the proposed Plaintiffs are similarly situated, the court finds that Plaintiffs have met their modest factual burden. Accordingly, the court will grant Plaintiffs' motion and conditionally certify the collective.

Regarding Plaintiffs' request that the court authorize an opt-in notice to be sent to all potential members of this EPA collective action, the court recognizes that "by monitoring preparation and distribution of the notice, a court can ensure that the notice is timely, accurate, and informative, and can settle disputes about the notice's content before it is distributed." *Hoffman-La Roche*, 493 U.S. at 166. Thus, the parties shall submit a joint proposed notice to the court for approval by October 25, 2018. If the parties cannot agree on the notice language, they shall submit an explanation of disputes and proposed alternative language by October 25, 2018. Finally, the court will appoint Plaintiffs' counsel – George A. Hanson and Alexander T. Ricke of Stueve Siege Hanson, and Larry A. Weisberg and Derrek W. Cummings of McCarthy Weisberg Cummings, P.C. – as counsel for the conditionally certified collective.

## IV. <u>Conclusion</u>

For the reasons stated herein, the court will grant Plaintiffs' motion for conditional collective action certification (Doc. 42), appoint Plaintiffs' counsel to represent the conditionally certified class, and require a joint proposed notice to be submitted by October 25, 2018. An appropriate order will be issued.

 s/Sylvia H. Rambo          
SYLVIA H. RAMBO
United States District Judge

Dated: September 25, 2018